IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHARLES CURRY JOHNSON,

        Plaintiff,

v.   CIVIL ACTION NO. 2:25-cv-00223

WEST VIRGINIA DIVISION OF CORRECTIONS
AND REHABILITATION, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant West Virginia Division of Corrections and Rehabilitation's ("WVDCR") Motion to Dismiss. (ECF No. 10.) For the reasons discussed herein, the motion is **GRANTED**.

*I.   BACKGROUND*

This matter arises out of the alleged use of force against Plaintiff Charles Johnson ("Plaintiff") during an incarceration at the North Central Regional Jail ("NCRJ"). (ECF No. 1-1.) According to the Complaint, Plaintiff was in section C-8 at NCRJ when he was called out of his cell for a physical/health check by one of the nurses. (*Id*. at 4, ¶ 7.) While Plaintiff was participating in the physical, he was evidently informed over the intercom that his grandmother had passed away. (*Id*.) Once Plaintiff completed the physical, he walked back into his cell and slammed his cell door because he was upset over the passing of his grandmother. (*Id*.)

Roughly five minutes later, Lt. Timothy Tibbs ("Defendant Tibbs") allegedly came to Plaintiff's cell and asked why Plaintiff had slammed the door. (*Id*.) By that time, Plaintiff states that he was in his bed in his cell, was not causing any disturbance, did not refuse any orders, and was not a threat to himself, Defendant Tibbs, or anyone else. (*Id*. at ¶ 8.) Yet, before Plaintiff could respond, Defendant Tibbs sprayed him three times in his face with O.C. spray without any warning. (*Id*. at ¶ 8.) The Complaint alleges that Plaintiff fell to the ground and was then struck repeatedly by Defendant Tibbs with a baton in his right upper thigh. (*Id*. at ¶ 7.) Defendant Tibbs supposedly hit Plaintiff approximately six times with his baton as Plaintiff lay on the ground. (*Id*.)

As a result of the use of force, Plaintiff claims to have suffered burning eyes, shortness of breath, burning of his skin, and serious injury and pain to his leg. (*Id*. at 5, ¶ 13.) He also alleges that Defendant Tibbs filed a false incident report, which caused Plaintiff to be placed in "the hole" due to the documented infraction. (*Id*. at ¶ 9.)

Consequently, Plaintiff brought this suit against WVDCR and Defendant Tibbs in the Circuit Court of Kanawha County, West Virginia on December 19, 2024. (ECF No. 1 at 1, ¶ 1.) The Complaint contains the following counts: Count I – Outrageous Conduct by Defendant Tibbs; Count II – Violations of 42 U.S.C. § 1983 by Defendant Tibbs; and (3) Count III – Vicarious Liability against WVDCR. (*Id*. at 5–9; *see also* ECF No. 12 at 1 (clarifying claims).) On April 4, 2025, Defendant Tibbs removed the case to this Court. (EFC No. 1-4.)

WVDCR filed the pending Motion to Dismiss on May 8, 2025. (ECF No. 10.) Plaintiff filed a response, (ECF No. 11), and Defendant WVDCR filed a reply, (ECF No. 12). As such, this motion is fully briefed and ripe for adjudication.

2

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach.

First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III. DISCUSSION

In the pending motion, WVDCR argues that Count Three should be dismissed against it because it cannot be vicariously liable for the intentional acts of its employees. (ECF No. 11 at 12.) Conversely, Plaintiff argues that WVDCR is vicariously liable for the tort of outrage claim

3

alleged against Defendant Tibbs because his conduct fell within the scope of his employment. (ECF No. 1-1 at 8, ¶ 24.)   The Court agrees with Defendant WVDCR.

For an employer to be vicariously liable for the acts of an employee, the acts must have been committed within the scope of the employment or within the employee's authority.   *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 768 (W. Va. 2014).   Factors relevant to this inquiry include whether the conduct is "1) of the kind he is employed to perform; 2) occurs within the authorized time and space limits; 3) it is actuated, at least in part, by a purpose to serve the master, and; 4) if force is used, the use of force is not unexpectable by the master."   *Id.* at 769 (quoting Restatement (Second) of Agency § 228 (1958) (emphasis omitted)).   Acts that are "*manifestly outside* of the scope of [an employee's] authority or employment" are "notable for being driven by *personal motives* which in *no way benefit* the State or the public, nor is it reasonably incident to the official or agent's duties."   *Id.* at 765 (emphasis added).

In this case, Defendant Tibbs's alleged conduct falls manifestly outside of the scope of his authority or employment.[1]   As discussed above, Plaintiff alleges that Defendant Tibbs entered his cell and, without provocation, sprayed him multiple times in the face with O.C. spray while Plaintiff was seated on his bed.   (ECF No. 1-1 at 4, ¶ 7.)   Plaintiff further alleges that, after he fell to the ground because of the effects of the O.C. spray, Defendant Tibbs struck him repeatedly with a baton.   (*Id.*)   Plaintiff asserts that he did not refuse any orders, was not causing a

---

[1] Plaintiff argues that, ultimately, this determination should be left to a jury.  (ECF No. 12 at 7.)   While this determination is ordinarily a question of fact, it becomes a question of law "if there is not sufficient evidence from which a reasonable juror could conclude that the action was within the scope of the employment."   *Doe v. Sipper*, 821 F.Supp.2d 384, 388 (D.D.C. 2011).   Consequently, the present issue poses a question of law because Defendant Tibbs's alleged conduct did not occur within the scope of his employment.

4

disturbance, and received no warning prior to Defendant Tibbs' use of the O.C. spray and physical striking.  (*Id*. at 5, ¶ 13.)

While this occurred "within the authorized time and space limits" of Defendant Tibbs's employment, that conduct is not the sort that Defendant Tibbs is employed to perform, cannot serve any justifiable purpose of the WVDCR, and is unexpectable by WVDCR.  *See A.B.*, 766 S.E.2d at 769.  In fact, Plaintiff claims that Defendant Tibbs' conduct clearly violated WVDCR policy which "addresses the duty to protect inmates from harm as well as the use of force policy adopted by the WVDCR."  (ECF No. 1-1 at 5, ¶ 13.)  Plaintiff further asserts that Defendant Tibbs knowingly filed a false incident report to conceal his misconduct.  (*Id*. at ¶ 9.)

Indeed, this Court has consistently and repeatedly found that conduct similar to that alleged here are intentional tortious acts that do not fall within the scope of employment.  *See Liebau v. W. Virginia Div. of Corr. & Rehab.*, No. 2:24-CV-00587, 2025 WL 510399 (S.D.W. Va. Feb. 14, 2025) (Berger, J.) (dismissing inmate plaintiff's claim against WVDCR for vicarious liability for the tort of outrage where officer alleged to have deployed O.C. spray in retaliation for inmate asking for his door to be opened); *Marcum v. Bailey*, No. 2:20-CV-00628, 2020 WL 7646977, at *5 (S.D.W. Va. Dec. 23, 2020) (Berger, J.) (finding that "the retaliatory use of O.C. spray could in no way serve the purposes of the WVDOC," and was therefore outside the scope of employment.); *see also Hamilton v. Hill*, No. 2:20-cv-00368, 2020 WL 3472420 (S.D.W. Va. June 25, 2020) (Goodwin, J.) (finding battery claim based on correctional officers' alleged unlawful use of pepper spray is an intentional act outside the scope of the officers' employment).

Nevertheless, Plaintiff maintains that Defendant Tibbs's actions occurred within the scope of his employment and for the benefit of WVDCR.  (ECF No. 1-1 at 8, ¶ 26.)  For support,

Plaintiff relies primarily on the reasoning of the Supreme Court of Appeals of West Virginia ("SCAWV") in *Crawford v. McDonald*, finding that "a jury could reasonably find that the correctional officers' conduct in question was within the scope of their employment," where the plaintiff alleged unjustified use of O.C. spray, failure to decontaminate, and extended use of restraints. *Crawford v. McDonald*, No. 21-0372, 2023 WL 2729675 (W. Va. Mar. 31 2023). However, factually, this case differs from *Crawford* because in *Crawford* the officer—after first warning the inmate—sprayed the inmate with O.C. foam when the inmate refused to comply with his order. 2023 WL 2729675, at *2. The SCAWV found the officer's conduct could reasonably fall within the scope of his employment because the officer's actions occurred while "trying to secure" the inmate. *Id.* at *7. Here, Plaintiff alleges that Defendant Tibbs sprayed him with O.C. spray without warning or provocation. (ECF No. 1-1 at 4, ¶ 8.) Unlike the conduct in *Crawford*, there are no facts alleged in this case to indicate any type of security, disciplinary or other issue justifying Defendant Tibbs spraying Plaintiff with O.C. spray for the benefit of WVDCR. The factual allegations indicate that Defendant Tibbs sprayed Plaintiff with O.C. spray without legal justification. Accordingly, *Crawford* is unlike the present case and does not apply here.

Assuming Plaintiff's allegations to be true, no reasonable inference can be drawn that Defendant Tibbs' intentional wrongful conduct was done in the interest of or for the benefit of the WVDCR. Defendant Tibbs engaged in intentional conduct outside of the scope of his employment. Therefore, WVDCR's motion to dismiss is **GRANTED**.[2]

---

[2] WVDCR also argues that dismissal is warranted because it is entitled to qualified immunity on Plaintiff's state law claims. (ECF No. 11 at 9.) As noted above, because the Court finds that the alleged actions of Defendant Tibbs were not committed within the scope of his employment, there is no need to entertain this argument. Therefore, the Court declines to take up the issue of qualified immunity.

## IV.  CONCLUSION

For these reasons, Defendant WVDCR's Motion to Dismiss, (ECF No. 10.), is **GRANTED**.  The Court further **DISMISSES** Defendant WVDCR from this action and **DIRECTS** the Clerk to remove Defendant WVDCR as a named defendant in this matter.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:  November 13, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE